# Attachment 1

## *Affidavit*

**STATE OF MICHIGAN**                                 **CASE NO.**
**8TH DISTRICT COURT**

## AFFIDAVIT FOR SEARCH WARRANT

Det. Greg Day, affiant states that:

### 1. THE PERSON, PLACE OR THING TO BE SEARCHED IS DESCRIBED AS AND IS LOCATED AT:

The structure commonly referred to as ██ W Michigan Ave apartment 10, City of Kalamazoo, County of Kalamazoo, State of Michigan. The residence is further described as being a two-story multi-unit townhome structure within the Matterhorn Townhome Complex. The building is tan in color with a brick exterior main level. The complex is accessed from W Michigan Ave between Fraternity Village Dr and Kenbrooke Court and is on the southside of the road. The numerals ██ are affixed to the north side of the structure which faces W Michigan Ave. Apartment 10 is located on the southern end of the building and has an exterior main entry door with the numeral "10" affixed to the outside. The door is tan in color and on the west side of the building facing the parking lot. Also to be searched are any grounds, rooms, closets, cell phones, storage spaces, persons, vehicles in control of the occupants/residents, and/or appurtenant structures located on the premise of ██ W Michigan Ave apartment 10.

### 2. THE PROPERTY TO BE SEARCHED FOR AND SEIZED, IF FOUND, IS SPECIFICALLY DESCRIBED AS:

1. Any forms of fentanyl and/or other controlled substances.
2. Any tools, equipment, records, notes, tabulations and U.S. currency believed to be the evidence and proceeds in manufacturing and/or trafficking of controlled substances.
3. Any paper, bills, receipts showing residency or control of the above premises.
4. Any and all firearms located in the aforementioned premises.
5. Any cell phones, computers, tablets, and/or other electronic storage devices.

### 3. THE FACTS ESTABLISHING PROBABLE CAUSE OR THE GROUNDS FOR SEARCH ARE:

Your affiant has been an MCOLES certified police officer for approximately 7 years, during which time I have been involved in over 675 investigations involving the sale and or use of illegal drugs and 375+ additional weapons investigations. My current duties include, but are not limited to investigating violations of City Ordinances and State Statutes including controlled substance, weapon violations, and violent crimes. I have received training from Kalamazoo Public Safety, the Kalamazoo Valley Enforcement Team, Desert Storm Training group, the DEA, the Department of Homeland Security, and the Kalamazoo Law Enforcement Training Center. This training and experience makes me knowledgeable in the sale, manufacturing, and use of narcotics and firearms.

This affidavit consists of _8_ pages.                                    17226

_____
Affiant

Subscribed and sworn before me on: _12/14/22_
Date                                             Judge/Magistrate

## AFFIDAVIT FOR SEARCH WARRANT
### - 2 of 8 -

Currently I am a Detective assigned to the Criminal Invesigative Division. Prior to that I was a member of the Crime Reduction Team as an investigator, primarily focusing on addressing priority offenders, violent crimes, weapon violations, and drug crimes.

A. That on 11/26/22 KDPS officers were dispatched to ▇ W Michigan Ave Apt 4 on the report of a found dead person. Upon arrival, officers located a male identified as ▇▇ ▇ deceased on the floor of his bedroom. ▇ was pronounced dead on 11/26/22 at 2313 hours by Dr. Loescher #2309. His body was transported to WMU for an autopsy to be conducted. The results of the autopsy are still pending.

B. Upon inspecting the room that ▇ was located in, officers located a single glass pipe, consistent with those used for the ingesting of narcotics, laying on the ground approximately five feet to the right side of ▇ Upon inspecting the area to the left of ▇ officers observed a glass liquor bottle within reaching distance that appeared to have a capped syringe wedged into the neck of the bottle.

   1) Your affiant knows from training and experience that syringes are used for the ingesting of narcotics. The use of these syringes to ingest narcotics, specifically often heroin/fentanyl, can often lead to drug overdose and/or death.

C. While searching a pile of clothing near ▇ head, a black and orange smart phone (believed to belong to ▇ was located within the pile. This phone was seized by investigating officers and stored at KDPS HQ.

D. That ▇ death was reported by his roommate, Joshua Shook, who located the body in the apartment. Shook reported to officers that the last time he saw ▇ alive was early morning on 11/24/22 inside of ▇ W Michigan Ave.

E. That on 11/28/22 your affiant drafted and submitted a search warrant for the contents of the phone recovered from ▇ The warrant was reviewed and signed by Judge Ankley on 11/28/22. The phone was then submitted to KDPS Analyst Fry for extraction.

F. The results of the phone extraction were received on 12/13/22. Upon review of the contents of ▇ cell phone, your affiant observed several text message and phone communications between ▇ device and phone number 269-599-4535. These messages were indicative based on my training and experience of drug transactions between ▇ and 269-599-4535. Your affiant checked the TLO online database and found that phone number 269-599-4535 is linked to Antjuan Pierre Jackson ▇ ). Your affiant then checked with the Michigan

_____
Affiant

12/14/22
Date

_____
Judge/Magistrate Eight District Court

12.14-22
Date

## AFFIDAVIT FOR SEARCH WARRANT
### - 3 of 8 -

Department of Corrections and found that Antjuan Jackson was on parole in 2022 and that he provided the phone number 269-599-4535 to MDOC as the phone number belonging to him.

1) That Antjuan Jackson also provided an address for parole of ▮ W Michigan Ave apt 10. Your affiant checked Jackson in SOS records and found him to have a current listed address of ▮ W Michigan Ave apt 10.

2) It should be noted that the victim, ▮ lived and was found deceased from a suspected drug overdose at ▮ W Michigan Ave apt 4. This is the same building, and just a few apartments away, from Jackson.

G. A sample of the messages between ▮ and 269-599-4535 is included below:

1) Outgoing message from device on 11/15/22 at 20:01:45(UTC+0) – "Hey its shawn. Do u buy F. Stamps. Just wondering"
2) Incoming message from 269-599-4535 – "Yea"
3) Incoming message from 269-599-4535 – "What u got"
4) Outgoing message from device – "100 for 50"
5) Incoming message from 269-599-4535 – "Ok I got a 50 for you"
6) Outgoing message from device – "Ok ill be there home in 10"
7) Outgoing message from device – "U home"
8) Incoming message from 269-599-4535 – "Yea"

   a) Your affiant knows from training and experience that drug users will often trade their government provided food stamps in exchange for drugs. Drug dealers will often then charge the users extra for having used food stamps instead of cash, which can be seen above when the transaction amount is agreed upon as "100 for 50". This indicates that ▮ is exchanging 100 dollars worth of food stamps for 50 dollars worth of narcotics. Furthermore, Jackson's device is recorded as saying "I got a 50 for you". This is common terminology used by drug dealers. Saying that he has "a 50" for ▮ means that he has 50 dollars worth of packaged drugs for ▮

1) Outgoing message from device on 11/17/22 at 20:55:14(UTC+0) – "Hey u home. I got paid"
2) Incoming message from 269-599-4535 – "Whats good bro"
3) Outgoing message from device – "Was wanting to grab that card if u were finished w"
4) Incoming message from 269-599-4535 – "Ok"
5) Incoming message from 269-599-4535 – "Give me a sec ill text u"

_____ 3226
Affiant

12/14/22
Date

_____
Judge/Magistrate Eight District Court

12.14.22
Date

## AFFIDAVIT FOR SEARCH WARRANT
### - 4 of 8 -

6) Outgoing message from device – "Ok"
7) Incoming message from 269-599-4535 – "U ready"
8) Outgoing message from device – "Yeah I'll be there in a sec"
9) Outgoing message from device – "I knocked and waited idk. Im home again"

    a) These messages indicate that █████ did in fact give his food stamp card to Jackson and is looking to get it back. █████ also indicates to Jackson "I got paid", which is common for drug users to do in order to get their dealers attention and let them know that they have money in hand to buy new drugs. Furthermore, these messages between the two indicate that they live close to each other as █████ stated that he will be "there in a sec" and that he knocked, waited, and then was quickly home again. This further establishes the ties between █████ and Jackson as they both live at ███ W Michigan with █████ in apartment 4 and Jackson in apartment 10.

1) Outgoing message from device on 11/20/22 at 01:27:35(UTC+0) – "Can I stop down there?"
2) Incoming message from 269-599-4535 – "Whatbu need"
3) Outgoing message from device – "I'm broke til payday or this unemployment hits my"
4) Incoming message from 269-599-4535 – "Ok"

    a) Your affiant knows through training and experience that these messages are again indicative of a drug deal. In these messages, Jackson is asking █████ what he needs and █████ responds that he has no money until payday or unemployment. Drug users often run out of money and request drugs on a "front". Drug dealers then often provide these drugs on the front and keep a tabulation of how much money a user owes them. Additionally, █████ asks if he can "stop down there", further showing the close proximity of the two of them.

1) Outgoing message from device on 11/20/22 at 22:24:26(UTC+0) – "Hey can I stop over"
2) Incoming message from 269-599-4535 – "How many nails u need"
3) Outgoing message from device – "20"
4) Incoming message from 269-599-4535 – "Ill hit u in a lil"
5) Outgoing message from device – "Ok"

    a) Your affiant again recognizes this interaction between the two as indicative of a drug transaction. █████ asks if he can stop over and Jackson then responds by asking how many "nails" he needs. Drug dealers will often substitute drug terms for benign words while communicating by phone to try and camouflage the conversation as a drug deal. █████ then

_____  
Affiant

_12/14/22_  
Date

_____  
Judge/Magistrate Eight District Court

_12-14-22_  
Date

# AFFIDAVIT FOR SEARCH WARRANT
## - 5 of 8 -

responds that he needs "20" which is a common increment for a drug user to purchase and means 20 dollars worth of narcotics. Additionally, this conversation happens just a few hours after the one documented above on 11/20/22. It is very common for drug users to return to their drug dealers just hours after having purchased drugs, or having them fronted, in order to obtain more and continue their high.

1) Outgoing message from device on 11/24/22 at 03:19:17(UTC+0) – "I got 100"

2) Jackson's device never returns a text however at 03:45:22 (UTC+0) Jackson's device (269-599-4535) then calls ███ and a 55 second phone call takes place.

   a) This was the last phone call to be answered by ███ before he died. Additionally, the message sent on 11/24/22 to Jackson stating "I got 100" is the last message sent from the device before ███ died.

H. It should be noted that all of the above messages and calls were stamped in UTC time. UTC time is Coordinated Universal Time and is the primary time standard by which the world regulates clocks and time. In Kalamazoo, where ███ phone was utilized, clocks operate on the Eastern Standard Time Zone. Eastern Standard Time is five hours behind the Coordinated Universal Time standard, which means that each call or text was sent or received 5 hours prior to the time stamp of the phone extraction. For example, the phone call received by ███ from Jackson on 11/24/22 at 03:45:22 (UTC+0) was actually received in Kalamazoo on 11/23/22 at 22:45:22. This means that the 55 second phone call took place just hours before the last time that ███ was seen alive.

I. That your affiant contacted CRT/KVET investigators on 12/13/22 who stated that Antjuan Jackson is known to them in reference to an ongoing fentanyl distribution investigation. Information was relayed to your affiant that within a week of the death of ███ occurring, a controlled buy was conducted with Jackson at ███ W Michigan Ave apartment 10. The information reference that controlled buy is as follows:

1) That on 11/23/22, a confidential informant (2128) advised CRT/KVET that he/she could purchase oxycodone pills from a known drug dealer. Investigator Boglitsch met with the confidential informant and a strip search was performed on his/her person. No contraband or US currency was located on his/her person. The KI was supplied with official KVET funds to purchase a quantity of oxycodone pills.

_____
Affiant

12/14/22
Date

_____
Judge/Magistrate Eight District Court

12-14-22
Date

## AFFIDAVIT FOR SEARCH WARRANT
### - 6 of 8 -

2) The known drug dealer was contacted via cell phone by KI 2128 and an order was placed for the oxycodone pills. The drug dealer advised that they were out of narcotics and needed to go get them. Surveillance was conducted on the known drug dealer after the order had been placed. The known drug dealer was surveilled to ▮ W Michigan Ave, Matterhorn Townhomes. The known drug dealer then entered apartment 10, after knocking at the door. The known drug dealer then exited the apartment and went directly to a predetermined location set with the confidential informant to deliver the oxycodone pills.

3) The KI was kept under constant surveillance after the delivery of oxycodone pills, which were then turned over to Investigator Boglitsch. A second strip search was conducted of the confidential informant and their property. No contraband or US currency was located on his/her person.

4) The pills purchased during the controlled buy were submitted to the KDPS lab for analysis. The lab analysis concluded that the pills were positive for fentanyl. Your affiant knows through training and experience that pills advertised as things other than fentanyl are often laced with fentanyl, usually unknown to the purchaser.

5) After the completion of the controlled buy, surveillance was continued of ▮ W. Michigan, Apt 10. The source of supply living at this address was identified as Antjuan Pierre Jackson, ▮, per SOS and KDPS records. (KDPS 22-017487)

J. That your affiant conducted a criminal history check of Jackson and found him to have a prior controlled substance conviction. It is as follows:

1) Felony controlled substance – possess (cocaine, heroin, or other narcotic) less than 25 grams. Pled guilty 9/22/14

K. That on 12/13/22, surveillance was conducted on ▮ W Michigan Ave apartment 10. During this surveillance a black male matching the physical build of Jackson was observed entering the apartment and using a key to unlock the door. The male was wearing a facemask and was unable to positively be identified as Jackson, however his height, weight, and build matched that of Jackson.

1) During the course of this surveillance the same male was observed exiting apartment 10 several times. The male would walk on foot to the parking lot to an area out of view of the surveillance and then return within a short time and enter back into the apartment. This male was wearing the mask each time he

_____
Affiant

12/14/22
Date

_____
Judge/Magistrate Eight District Court

12-14-22
Date

## AFFIDAVIT FOR SEARCH WARRANT
### - 7 of 8 -

exited but these short terms exits and then returns to the lot were indicative of drug deals.

L. That based on your affiant's experience and participation in other drug and firearm investigations, your affiant knows the following:

1. That drug traffickers maintain, on hand or nearby (including the possession of other individuals present) large sums of U.S. currency in order to maintain and finance their on-going drug business;

2. That drug traffickers maintain books, notes, ledgers, records, receipts and other papers relating to the transportation, ordering, sale and distribution of controlled substances, and that these items are maintained where the traffickers have ready access to them;

3. That it is common for drug dealers to secrete contraband and proceeds of drug transactions and records of transactions in secure locations in their residences and/or they often utilize a second and separate location to conceal/store these items from law enforcement authorities;

4. That these items concealed by persons engaged in drug trafficking are caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions; evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money made from engaging in drug trafficking activities;

5. That when drug traffickers amass proceeds from the sales of drugs, the drug traffickers attempt to legitimize these profits. To accomplish these goals, drug traffickers utilize, including but not limited to, banks and their attendant services, securities, cashier's checks, money drafts and real estate. These same traffickers will also put assets in the names of others, again to conceal from law enforcement authorities;

6. That drug traffickers take, or cause to be taken, photographs of themselves, their associates, their property and their drugs;

7. That drug traffickers commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses and/or telephone numbers of their associates in the drug trafficking organization;

8. That drug traffickers commonly have in their possession, either on their person or at their residence or a secondary location, one or more firearms.

_____
Affiant

_____
Judge/Magistrate Eight District Court

12/14/22
Date

12.14.22
Date

## AFFIDAVIT FOR SEARCH WARRANT
### - 8 of 8 -

These firearms are used to protect and secure a drug trafficker's proceeds of drug trafficking, the drugs and themselves and their associated group members.

9. That drug traffickers maintain packaging materials, equipment and scales utilized in the packaging of their drugs at their residence.

10. That drug traffickers often store narcotics and other drug paraphernalia in garages, vehicles, and storage buildings and/or appurtenant structures located on the property of the residence or secondary location.

11. That through your affiant's training, experience, and education, it is known that person who use, sell, and traffic illegal drugs will commonly carry and conceal drugs, paraphernalia, and/or weapons on their person.

M. That your affiant states that based on the above listed information and other facts given that there is probable cause to believe that illegal narcotics can be found at aforementioned location(s), and that the occupant(s) there is/are partaking in ongoing violations of the controlled substance act.  The aforementioned location should be searched and listed items seized if located.

Affiant

Date 12/14/22

Judge/Magistrate Eight District Court

Date 12.14.22

STATE OF MICHIGAN                                      CASE NO.
DISTRICT COURT

## SEARCH
## WARRANT

Detective Greg Day, affiant, states that:

1.  **THE PERSON, PLACE OR THING TO BE SEARCHED IS DESCRIBED AS AND IS LOCATED AT:**

The structure commonly referred to as ██ W Michigan Ave apartment 10, City of Kalamazoo, County of Kalamazoo, State of Michigan. The residence is further described as being a two-story multi-unit townhome structure within the Matterhorn Townhome Complex. The building is tan in color with a brick exterior main level. The complex is accessed from W Michigan Ave between Fraternity Village Dr and Kenbrooke Court and is on the southside of the road. The numerals ██ are affixed to the north side of the structure which faces W Michigan Ave. Apartment 10 is located on the southern end of the building and has an exterior main entry door with the numeral "10" affixed to the outside. The door is tan in color and on the west side of the building facing the parking lot. Also to be searched are any grounds, rooms, closets, cell phones, storage spaces, persons, vehicles in control of the occupants/residents, and/or appurtenant structures located on the premise of ██ W Michigan Ave apartment 10.

2.  **THE PROPERTY TO BE SEARCHED FOR AND SEIZED, IF FOUND, IS SPECIFICALLY DESCRIBED AS:**

    1.  Any forms of fentanyl and/or other controlled substances.
    2.  Any tools, equipment, records, notes, tabulations and U.S. currency believed to be the evidence and proceeds in manufacturing and/or trafficking of controlled substances.
    3.  Any paper, bills, receipts showing residency or control of the above premises.
    4.  Any and all firearms located in the aforementioned premises.
    5.  Any cell phones, computers, tablets, and/or other electronic storage devices.

**IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN:** I have found that probable cause exists and you are commanded to make the search and seize the described property. You are further commanded to promptly return this warrant and tabulation to the Court.

DATE                                          JUDGE/MAGISTRATE

12/4/22    10:00 PM                           P19997